𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CHURCH AND OTHERS V. GOSHEN IRON COMPANY.

November 16, 1911.

Absent, Cardwell, J.

1. LANDLORD AND TENANT—*Right of Distress.*—Distress for rent will not lie unless the relation of landlord and tenant exists between the parties. The right is not only incident to that relation, but is dependent upon it.

2. LANDLORD AND TENANT—*Lease—License—Agreement to Pay Royalties—Case at Bar.*—An agreement whereby the owner of a limestone quarry agrees to let another take stone from the quarry for a stipulated time, and the other party agrees to furnish all necessary machinery to quarry and remove not less than a stated amount of stone each and every working day, and pay to the owner a royalty of ten cents a yard for the stone, which royalties are to be paid weekly, and in default of such payment all operations are to cease until the royalties are paid, is a license and not a lease. Where the land is still to be considered in the possession of the grantor, and the grantee has acquired no estate in it, in respect of which he may bring an action of ejectment, the instrument of grant will only amount to a license.

Error to a judgment of the Circuit Court of Augusta county in a proceeding upon a distress warrant for rent. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*H. J. Taylor* and *Blease & McCoy,* for the plaintiffs in error.

*R. L. Parrish* and *J. M. Perry,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This writ of error is to a final order upon a distress warrant for rent, under Virginia Code, 1904, Ch. 127. Upon the hearing, the plaintiff in error, Church, the alleged tenant, resisted the demand on several grounds, while his co-plaintiff in error, the Good Roads Machinery Company, set up its ownership of the property levied on by interpleader. A jury was waived and the whole matter was submitted to the court, which held the property liable to distress, and ascertaining the rent due to be $510, gave judgment for that sum, and likewise ordered a sale of so much of the property distrained as might be necessary to discharge the rent.

The principle is elementary that distress for rent will not lie unless the relation of landlord and tenant exists between the parties. The right is not only incident to that relation, but is dependent upon it. The controlling question in this case, therefore, is whether the relation of landlord and tenant arises out of the contract upon which the proceeding is based.

The agreement between the Goshen Iron Company and Church stipulates, that the first party allows the second party to get and remove ballast rock from its limestone quarry, upon the following terms: The second party to furnish all machinery necessary for such quarrying, and to pay the first party a royalty of ten cents a yard, of 2,500 pounds, and to remove at least one hundred tons of ballast rock each and every working day that the contract is in force. The royalties for each week were to be due and payable on the succeeding Thursday at noon; and in default of payment all operations were to cease until such royalty was paid. The minimum royalty was to begin to accrue on the day the second party started his machinery, which should be not later than October 1, 1907, and the contract

was to terminate on January 31, 1908, at which time the second party was to turn over the premises occupied by him to the first party. The remaining stipulations do not affect the character of the agreement.

In 27 Cyc. 690, it is said: "There is a broad distinction between a lease of a mine, under which the lessee enters into possession and takes an estate in the property, and a license to work the same mine. In the latter case the licensee has no permanent interest, property, or estate, in the land itself, but only in the proceeds, and in such proceeds not as realty but as personal property; and his possession is the possession of the owner. A contract simply giving a right to take ore from a mine, no interest or estate being granted, confers a mere license, and the licensee acquires no right to the ore until he separates it from the freehold. But an instrument that demises and leases certain lands for mining purposes only, for a designated term of years, at a fixed rent, and giving the right to erect all necessary buildings, etc., is a lease, and not merely a mining license."

So in the leading case of *Funk* v. *Holderman*, 53 Penn. 229, it was held, that "A grant of the free and uninterrupted privilege to go upon a tract of land to prospect, bore, erect engines, and take any ore, oil, etc., out of the earth, does not amount to a lease, nor a sale of the land or the minerals, but is a mere grant of an incorporeal hereditament—a license to work the land for minerals, and one coupled with an interest not revocable at the pleasure of the licensor."

Bainbridge on the Law of Mines and Minerals (ed. 1841), at page 162, observes: "There is a great distinction between a lease of mines and a license to work mines. The former is a distinct conveyance of an actual interest or estate in lands, while the latter is only a mere right or incorporeal hereditament to be exercised in the lands of

others.   .   .   . In order to ascertain whether an instrument must be construed as a lease or a license, it is only necessary to determine whether the grantee has acquired by it any estate in the land, in respect of which he might bring an action of ejectment. If the land is still to be considered in the possession of the grantor, the instrument will only amount to a license, and though the grantee of the license will certainly be entitled to search and dig for mines according to the terms of his grant, and appropriate the produce to his own use, on payment of the stipulated rent or proportion, yet he will acquire no property in the minerals till they are severed from the land, and have thus become liable to be recovered in an action of trover."

This well defined distinction between a mining lease and a license is observed by our own decisions.

In *Barksdale* v. *Harrison,* 81 Va. 764, the court held that an agreement which conferred the right to "have and possess the exclusive use and privilege of digging, hauling off and working any ore now found, or which may hereafter be found anywhere on the said John A. Hairston's land," was the grant of a mere license to dig ore on the premises, not coupled with any estate or interest in the lands.

In the later case of *Young* v. *Ellis,* 91 Va. 297, 21 S. E. 480, the court construed the agreement to be not a mere license, a mining lease. But the agreement there was essentially different from the one under consideration. The indenture in that instance granted to Ellis the right to enter upon Young's land for the purpose of examining, testing and searching for minerals of all kinds; to erect and maintain such buildings and machinery and fixtures as might be necessary to work the mines, with the use of timber lands and water necessary and requisite in working the same, and the right of ingress and egress to such mines; for which Ellis agreed to pay "$25 per year, in the event the said minerals are not mined, said rental of $25 to be credited

88

on the royalty herein specified whenever actual mining commences." Ellis furthermore agreed to pay Young "ten cents per gross ton for all ores mined and shipped from said lands quarter-yearly . . . for the use and rent of said lands." The lease was for ninety-nine years, with the privilege of buying the land leased within five years at $1,000, and contained a clause of forfeiture for non-payment of rent, with the right to the lessor to re-enter. The court held this agreement to constitute a lease. But it declared that a parol agreement or written contract, where the licensee does not promise or undertake anything more than to pay a royalty on the ore raised from the mine is a revocable license, and not a lease. See also 1 Minor on Real Property, sec. 51; Taylor's Landlord & Tenant (6th ed.), sec. 251.

Tested by these authorities, it would seem clear that the relation of landlord and tenant did not exist between the Goshen Iron Company and Church; and, consequently, the issuance and levy of the distress warrant was without authority of law.

It follows that the order must be reversed, and judgment entered in accordance with the foregoing opinion.

*Reversed.*