MANAGEMENT ENTERPRISES, INC., ET AL.

V.

THE THORNCROFT COMPANY, INC.

Record No. 910702

April 17, 1992

Present: All the Justices

*A. Davis Bugg, Jr. (Rumsey, Breedon, Hubbard, Bugg & Terry*, on briefs), for appellants.
*William J. LoPorto; Edmund P. Shevlin* for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The primary issue we consider in this appeal is whether a notice of termination provision in a "hunting lease" is ambiguous.

The Thorncroft Company, Inc. (Thorncroft), executed an agreement referred to as an "exclusive hunting lease" with Management Enterprises, Inc. (Management Enterprises).* The agreement, among other things, gave Management Enterprises the right to hunt, fish, and trap on approximately 619 acres of Thorncroft's property, commonly known as the West End Farm tract and the Magnolia Farm tract, located in Northumberland County. Thorncroft conducted farm operations on certain portions of the property.

---

* Even though the agreement is referred to as an "exclusive hunting lease," it is actually a license because it does not convey a possessory interest in the property. *Compare Bunn* v. *Offutt*, 216 Va. 681, 683, 222 S.E.2d 522, 525 (1976) (license); and *Clark* v. *Harry*, 182 Va. 410, 414, 29 S.E.2d 231, 233 (1944) (lease). *See also Church* v. *Goshen Iron Co.*, 112 Va. 694, 696, 72 S.E. 685, 685-86 (1911) (lease and license distinguished).

The agreement is for a term of 32 years commencing on March 1, 1981, and terminating on February 28, 2013. The "rent" during the term of the "hunting lease" is $49,520, payable in annual installments of $1,547.50.

In October 1986, Thorncroft executed a contract to sell to Mill Creek Limited Partnership the West End Farm tract, which was encumbered by the "hunting lease." Henry G. Thorndike, a director and officer of Thorncroft, learned from a title examination that the "hunting lease" had been recorded and was considered a potential cloud on the title to the property. The Partnership refused to close on the property until the encumbrance was removed.

Thorncroft and Management Enterprises engaged in extensive negotiations. The negotiations culminated with a written release agreement in which Thorncroft agreed to pay Management Enterprises $15,000 for the release of its rights to use the West End Farm tract as permitted by the "hunting lease," subject to certain conditions.

In July 1989, Thorncroft filed a "Petition for Rescission of Lease And For Other Relief" in chancery. Thorncroft sought: rescission of the "hunting lease" alleging fraud, undue influence, unconscionability, and breach of the "hunting lease"; an adjudication that paragraph two of the "hunting lease" provided for a three-month written notice for termination; an adjudication that the release is void and unenforceable because of fraud, misrepresentation, and duress, and that the $15,000 payment made pursuant to the release should be refunded; and compensatory damages.

At the conclusion of a bench trial, the chancellor held, among other things, that Thorncroft could terminate the "hunting lease" at any time upon three-months written notice and that Management Enterprises must return the $15,000 it received from Thorncroft because the release agreement is unconscionable and, therefore, null and void. We awarded Management Enterprises an appeal.

Management Enterprises argues that the trial court erred in holding that Thorncroft had the right to terminate the "hunting lease" at any time by giving a three-month written notice to Management Enterprises.

Paragraph two of the "hunting lease" states:

2. A WRITTEN NOTICE OF THREE MONTHS shall be given by the Lessee should he desire to vacate at the ter-

mination of the lease; and should the Lessor desire possession a like notice shall be required; in the event no such notice is given by either party, then the lease shall continue in force from year to year at the same rent and subject to all the conditions and covenants herein contained. But if such notice shall have been given by either party, the Lessor, his agents or assigns, may advertise the premises for rent in one or more conspicuous places and may show the premises to any person desiring to rent the same for the purposes of game management.

We have consistently followed the "plain meaning" rule when construing written agreements.

[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties.

*Berry* v. *Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) (quoting *Globe Company* v. *Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)). We have defined "ambiguity" as "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time." *Berry*, 225 Va. at 207, 300 S.E.2d at 796 (quoting Webster's Third New International Dictionary 66 (1976)). Additionally, we must interpret the agreement as written and we are not free to rewrite its terms. *Graphic Arts Mutual Ins.* v. *C.W. Warthen Co.*, 240 Va. 457, 460, 397 S.E.2d 876, 877-78 (1990).

The plain language contained in the notice provision unequivocally and clearly specifies that if the lessee, Management Enterprises, desires to vacate at the termination of the "hunting lease," then it must give written notice three months before the termination date, which is February 28, 2013. Additionally, the plain language of the "agreement" requires that the lessor, Thorncroft, give written notice three months before the termination date if it desires to end the "hunting lease." If either party fails to give such written notice, then the "hunting lease" continues from year to year subject to the same rent, conditions, and covenants. Thus, we hold that Thorncroft, if it desired to terminate the "hunting

lease" utilizing the notice provision, could do so only by giving written notice to Management Enterprises three months before the termination date.

Next, Management Enterprises argues that the trial court erred by holding that the release agreement is unconscionable and, therefore, null and void and that Thorncroft is entitled to recover the $15,000 payment made to Management Enterprises.

We stated in *Smyth Brothers* v. *Beresford*, 128 Va. 137, 104 S.E. 371 (1920), the principles that we apply when determining whether a contract is unconscionable:

> While the jurisdiction undoubtedly exists in the courts to avoid a contract on the ground that it makes an unconscionable bargain, nevertheless an inequitable and unconscionable bargain has been defined to be 'one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other.' The inequality must be so gross as to shock the conscience.

*Id.* at 170, 104 S.E. at 382.

As we have already observed, the "hunting lease" gave Management Enterprises the right to hunt, fish, and trap on Thorncroft's property for 32 years. Additionally, the "hunting lease" conferred upon Management Enterprises numerous other rights including: the right to chain, lock, erect barriers or other movement restrictors on the property; the right to erect blinds on the property; and, the right to use rights of way, roads, and low water boundaries. Thorncroft recognized that Management Enterprises would "expend substantial money and resources to develop and manage a game program on the [property]." Also, Thorncroft agreed that it would not give permission to "individuals, groups of individuals, clubs or corporations to hunt, fish, or trap" on the property during the term of the "hunting lease."

■ Even though the trial court considered Thorncroft's payment of $15,000 to Management Enterprises in return for its release of these rights as exorbitant, the record does not reveal an inequality so gross as to shock the conscience. Accordingly, we hold that the release is not unconscionable.

■ In view of our holdings, we will reverse the judgment and remand the matter for further proceedings because the trial court did not decide whether Thorncroft was entitled to the remedy of

rescission of the "hunting lease" on the basis of fraud and duress as alleged in its pleadings. We decline to accept Management Enterprises' invitation to hold as a matter of law that Thorncroft is precluded from seeking rescission because of waiver and laches. Usually, proof of waiver is a question for the trier of fact, *Link Assoc. v. Jefferson Standard*, 223 Va. 479, 485, 291 S.E.2d 212, 216 (1982), and "whether under the circumstances of a given case a claim is barred by laches is primarily a decision resting within the discretion of the trial court." *Morris* v. *Mosby*, 227 Va. 517, 521, 317 S.E.2d 493, 496 (1984). If Thorncroft is not entitled to rescission of the "hunting lease," then the release agreement shall be binding upon the parties.

*Reversed and remanded.*