**L & E CORPORATION,**
Plaintiff–Appellee,

v.

**DAYS INNS OF AMERICA, INC.,**
Defendant–Appellant.

No. 92–1928.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1993.

Decided April 26, 1993.

Benjamin V. Madison, III, Hunton & Williams, Norfolk, VA, argued (Gregory N. Stillman, on brief), for defendant-appellant.

Herbert V. Kelly, Sr., Jones, Blechman, Woltz & Kelly, P.C., Newport News, VA, argued (James F. Thornton, III, on brief), for plaintiff-appellee.

Before WIDENER and LUTTIG, Circuit Judges, and VOORHEES, Chief United States District Judge for the Western District of North Carolina, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Appellant, Days Inns of America, Inc., citing an express reservation of the right not to be bound prior to its execution and delivery of a franchise agreement, refused to issue a hotel franchise to appellee, L & E Corporation. The United States District Court for the Eastern District of Virginia issued a permanent mandatory injunction, compelling Days Inns of America to enter into a ten-year franchise agreement with L & E Corpo-

ration. Days Inns appeals, arguing that the district court erred in finding an enforceable agreement between the parties. We agree, and therefore reverse.

### I.

On February 15, 1992, appellee, L & E Corporation ("L & E"), applied to appellant, Days Inns of America, Inc. ("Days Inns"), for a license to operate a Williamsburg, Virginia, hotel as a Days Inns franchise. In the application, Days Inns reserved several rights, including

> the absolute right ... to approve or disapprove this application, and to withdraw approval at any time before [Days Inns] executes the License Agreement. A license to operate a Days Inn System unit will be granted, if at all, only pursuant to a separate and fully executed License Agreement.

J.A. at 17. An officer of L & E provided the information requested in the application and signed it, certifying that all of the information was accurate and complete and that he would "promptly" notify Days Inns of "any material change" in the information. *Id.*

On March 31, 1992, Days Inns sent L & E a letter stating that L & E's application "ha[d] been approved ... subject to": "completion of all items described on the Closing Checklist attached"; "the absence of any material changes from the financial, background, and any other information furnished to [Days Inns]"; and "the accuracy of the representations in the General Certificate enclosed." *Id.* at 55. The March 31 letter also warned: "Please note that [Days Inns] will not be bound by the License Agreement or any ancillary agreement until it executes and delivers the License Agreement to [L & E]." *Id.* L & E sent Days Inns the required initial fee and completed the appropriate accompanying materials.

Because of conflicting studies of whether granting the franchise would harm other Days Inns franchisees in the Williamsburg area, Days Inns did not execute or deliver the license agreement. *See id.* at 202–03. Instead, it asked L & E to participate in arbitration to determine which impact study was the most reliable and told L & E that unless it consented to arbitration by July 6, 1992, Days Inns would consider L & E's application withdrawn. *Id.* L & E did not consent, and on that date brought the instant action against Days Inns in Virginia state court, seeking an injunction requiring Days Inns to execute the license agreement and issue a Days Inns franchise. *Id.* at 7–14. Days Inns removed the case to federal district court which, after an evidentiary hearing, granted L & E a permanent injunction, compelling Days Inns to "issue [to L & E] its signed standard or usual franchise agreement covering a period of ten years." *Id.* at 138. On September 18, 1992, a panel of this court entered a stay of the district court's injunction pending Days Inns' appeal.

### II.

■ The issue before us is whether a binding contract existed between Days Inns and L & E, requiring Days Inns to issue L & E a franchise. The unambiguous language of the license application and the March 31 letter are dispositive of that issue.[1] In the license application, Days Inns reserved "the *absolute right ... to withdraw approval at any* time" before it executed a license agreement. *Id.* at 17 (emphasis added). The next sentence reinforces this clear and simple reservation by warning that a franchise will be granted, "if at all, *only* pursuant to a separate and fully executed License Agreement." *Id.* (emphasis added). The subsequent March 31 letter, tentatively approving L & E's application, is equally explicit. In that letter, Days Inns cautioned: "Please note that *[Days Inns] will not be bound* by the License Agreement or any ancillary agreement *until*

---

1. L & E attempts to distinguish between the March 31 letter, under which it claims Days Inns is required to execute a franchise agreement, and the franchise agreement itself, under which Days Inns would have to issue a franchise. *See* Appellee's Br. at 18, 21. We reject this distinction as a false one, for to require Days Inns to execute a franchise agreement is to require it to comply with the terms of that agreement, namely to issue a franchise. Indeed, L & E itself appears subsequently to have recognized as much. *See id.* at 43 ("L & E understands that as a consequence of this ruling [ordering specific performance of the March 31 letter], the District Court is as a practical matter specifically enforcing the Franchise Agreement itself.").

**58**

it executes and delivers the License Agreement to you." *Id.* at 55 (emphasis added). It is undisputed that Days Inns withdrew approval of L & E's application when L & E did not consent to arbitration over the conflicting impact studies. It is likewise undisputed that Days Inns never executed or delivered a license agreement to L & E. As a matter of law, therefore, Days Inns preserved its right not to issue a franchise to L & E, and the district court erred in granting judgment to L & E.

The district court's fundamental error lay in its refusal to give effect to Days Inns' unequivocal disclaimers in the license application and the March 31 letter. The court apparently accepted L & E's argument that Days Inns was obligated to issue the franchise once L & E had completed all the application materials. According to the court, Days Inns' reservation of the right to withdraw approval was "not available as a defense," because "[t]here was no withdrawal of approval before the acceptance of the offer by [L & E] by its performance of the check list," *id.* at 135. In interpreting the application and letter in this manner, the district court simply rewrote the reservation that the parties agreed upon. Days Inns, with L & E's express approval, reserved "the absolute right ... to withdraw approval *at any time before [Days Inns] executes* the License Agreement," *id.* at 17 (emphasis added)—*not* the right to do so "at any time before L & E's performance of the check list." Similarly, the court misconstrued Days Inns' refusal to be bound in the March 31 letter as "merely a recital which has the effect that once there was compliance with the closing check list, it would accept the agreement." *Id.* at 133. This interpretation renders the disclaimer meaningless surplusage, for in the first paragraph of the letter, Days Inns had already made L & E's completion of the closing materials a condition of acceptance. *See id.* at 55 ("[L & E]'s application for a license to operate a Days Inn System Unit has been approved by Days Inns of America, Inc. ... subject to completion of all items described on the Closing Checklist attached.").

■ It is axiomatic that the district court was without authority to rewrite these provisions or to deny them their plain meaning.

"It is the function of the court to construe the contract made by the parties, not to make a contract for them, or to alter the contract they have made so as to conform it to the court's notion of the contract they should have made in view of the subject matter and the surrounding facts and circumstances.... It is the court's duty to declare what the *instrument itself* says it says." *Ames v. American Nat'l Bank,* 163 Va. 1, 176 S.E. 204, 216 (1934) (emphasis added); *see also, e.g., Paramount Termite Control Co. v. Rector,* 238 Va. 171, 380 S.E.2d 922, 925 (1989) ("We read the language used so as to give meaning to *all* the words; otherwise stated, we do not regard *any* language as meaningless, unless *compelled* to do so." (emphases added)); *Snyder v. Exum,* 227 Va. 373, 315 S.E.2d 216, 218 (1984) (provision written in mandatory terms must be interpreted as mandatory, for to do otherwise would be "to distort reality and, in effect, make a new contract for the parties. This we will not do.").

■ Equally inappropriate was the district court's reliance on "morality," "justice," and "the public interest" to defend its disregard for the plain language of the license application and March 31 letter. The court refused to apply Days Inns' reservation of the right to withdraw approval because to do so "would be unconscionable and would certainly be against the public interest." J.A. at 135. Similarly, the court dismissed Days Inns' reservation of the right not to be bound in the March 31 letter, saying: "It would violate public policy" and "would be immoral and unjust to deny the existence of a binding contract merely because of this alleged disclaimer." *Id.* at 133. Such general references to subjective notions of public policy cannot justify deviation from unambiguous contractual language. Public policy can only be implicated in the interpretation of a contractual agreement between private parties, where it is "explicit," "well defined and dominant," and "ascertain[able] by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (quoting *Muschany v.*

*United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)); *accord United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987); *St. Paul Mercury Ins. Co. v. Duke Univ.,* 849 F.2d 133 (4th Cir.1988); *see also, e.g., Dominick v. Vassar,* 235 Va. 295, 367 S.E.2d 487, 489 (1988) ("[A] court is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result."); *Marshall v. Murray Oldsmobile Co.,* 207 Va. 972, 154 S.E.2d 140, 144 (1967) ("We are loathe ... to declare invalid the formal undertakings of parties for ... vague reasons of public policy."). The district court in this case provided neither statutory authority nor legal precedent for its asserted public policy rationale, and we are aware of none.

▆▆▆▆ Nor could the district court rely on the narrow doctrine of "unconscionability" for its construction of the application and letter. *See* J.A. at 135. "[U]nconscionability deals primarily with a grossly unequal bargaining power at the time the contract is formed.... [W]here, as here, experienced parties agree to allocate unknown or undeterminable risks, they should be held to their bargain; courts, or juries, should not be permitted to rewrite the agreement." *Envirotech Corp. v. Halco Eng'g, Inc.,* 234 Va. 583, 364 S.E.2d 215, 220 (1988); *see also Management Enters., Inc. v. Thorncroft Co.,* 243 Va. 469, 416 S.E.2d 229, 231 (1992) (unconscionable contract is " 'one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other. The inequality must be so gross as to shock the conscience.' " (quoting *Smyth Brothers v. Beresford,* 128 Va. 137, 104 S.E. 371 (1920) (internal quotation omitted))). Here, two companies experi-

enced in the hotel business negotiated at arms length over a hotel franchise. Not only is there no "inequality so gross as to shock the conscience," *id.,* 416 S.E.2d at 232; there is no inequality at all.[2]

CONCLUSION

Days Inns and L & E unambiguously contracted that Days Inns' execution and delivery of a license agreement were preconditions to the issuance of a franchise to L & E. The district court's decision to treat those conditions as mere formalities, avoidable on grounds of fairness and public policy, was error. The judgment of the district court, accordingly, is reversed and the permanent injunction issued by the court is hereby vacated.[3]

REVERSED AND REMANDED.

---

**2.** We also reject as a legitimate basis for its holding the district court's suggestion that a contractual agreement arose through an implied covenant of good faith and fair dealing. *See* J.A. at 133. The Virginia Supreme Court has yet to recognize such a covenant, and the only case cited by either the district court or L & E for the application of that doctrine describes only a duty among *"contracting* parties ... in the *performance* of [an existing] agreement." *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669, 676 (4th Cir.1986) (emphases added), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987). Nothing in that case sug-

gests that the doctrine could be invoked to create a contract where otherwise none existed.

**3.** It appears that L & E sent Days Inns a $50,-433.34 check along with its license application, which Days Inns has not yet cashed, and that L & E spent approximately $65,000 in upgrading the hotel in contemplation of a franchise. *See* J.A. at 129, 134. We do not address the questions of whether Days Inns should return the check to L & E or compensate L & E for any upgrading expenses.