Present: Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

CAPITAL COMMERCIAL PROPERTIES, INC.

v.   Record No. 941926        OPINION BY JUSTICE LEROY R. HASSELL
                              September 15, 1995
VINA ENTERPRISES, INC.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

The primary issue we consider in this appeal is whether an "option to extend" provision in a lease is ambiguous.

The tenant, Vina Enterprises, Inc., executed a lease with Capital Commercial Properties, Inc.  Vina leased approximately 22,020 square feet of ground floor area in the Plaza Seven Shopping Center, located in the City of Falls Church.  Vina subdivided the demised space and sublet the demised space to certain shopkeepers, who operated a "mini-mall" known as the Eden Center.

The original leasehold period was 10 years.  The lease contains the following paragraphs pertinent to this dispute.  Paragraph 34(A), described as the "Option to Extend," states in relevant part:

34. (A)  Provided Tenant shall not then be in default under any of the agreements and conditions in this lease contained, Tenant shall have the right, at its election, to extend the original term of this lease for an additional period of five (5) years commencing upon the expiration of the original term, provided, further, that Tenant shall give Landlord notice of the exercise of its election hereunder not less than six (6) months prior to the expiration of the original term.  Provided Tenant shall not then be in default under any of the agreements and conditions in this lease contained, Tenant shall  have the right, at its election, to extend the original term of this lease as previously extended for an additional period of five

_____

[1]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

(5) years commencing upon the expiration of the original term as previously extended, provided, further, that Tenant shall give Landlord notice of the exercise of its election hereunder not less than six (6) months prior to the expiration of the original term as previously extended.

Paragraph 15(A) of the lease, which governs defaults, states in relevant part:

15. (A) (1) If Tenant shall default in the payment of rent or any other payment required of Tenant and if Tenant shall fail to cure said default within seven (7) days after Landlord shall give notice thereof to Tenant, or (2) if Tenant shall default in the performance or observance of any other agreement or condition on its part to be performed or observed hereunder and if Tenant shall fail to cure said default within fifteen (15) days after Landlord shall give notice thereof to Tenant . . . then, in any of such cases, Landlord lawfully may, immediately or at any time thereafter, and without any further notice or demand, enter into and upon the demised premises, or any part thereof in the name of the whole, by force or otherwise, and hold the demised premises as if this lease had not been made.

Paragraph 24 of the lease, which governs failure of performance, states in relevant part:

24. (A) If Tenant shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed, other than an obligation to pay money, and shall not cure such default within thirty (30) days after notice from Landlord specifiying [sic] the default, Landlord may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Tenant, and any amount paid or any contractual liability incurred by Landlord in so doing shall be deemed paid or incurred for the account of Tenant, Tenant agreeing to reimburse Landlord promptly therefor or save Landlord harmless therefrom. Landlord may cure any such default as aforesaid prior to the expiration of said waiting period, but after notice to Tenant, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Landlord's interest therein or to prevent injury or damage to persons or property.

Relying upon paragraph 34(A), Vina gave Capital notice of its intent to exercise the option to extend. Upon receipt of

Vina's notice, Capital informed Vina that the option could not be exercised because of certain purported defaults. Vina sought to cure the purported defaults and notified Capital of its efforts to do so.

Thereafter, Vina forwarded to Capital a new notice of its intention to extend the lease. Vina also requested that Capital notify Vina whether Capital believed Vina had exercised properly the option to extend the lease. Capital did not respond to Vina's requests, nor did Capital assert any additional defaults until the option renewal period had expired.

Vina filed this action seeking a declaration that it had properly exercised the option to extend and, therefore, it was entitled to lease the demised premises for an additional term of five years. At the conclusion of a bench trial, the trial court held, among other things, that the lease is ambiguous and that Vina had properly exercised its right to extend the lease for a term of five additional years. We awarded Capital an appeal.

First, Capital argues that Vina does not have a right to exercise the option to extend because Vina was in default when it attempted to extend the original leasehold term. Vina argues that the evidence presented below indicates that it was not in default. We disagree with Vina.

> Paragraph 9(A) of the lease states:
>     9.   (A)  Tenant agrees that during the term of
> this lease the demised premises will be used and
> occupied solely for the purposes specified in Article
> 32 of this Lease and for no other purpose(s)
> whatsoever.

There is no dispute between the litigants that Article 32 of the lease does not permit Vina or its subtenants to operate a travel

agency on the demised premises.

Gioan Nguyen, president of Vina, testified that one of Vina's sub-tenants conducted a business known as Liberty Travel Service in the demised premises and that this business was conducted during the option renewal period. Nguyen also testified that another travel agency, Blue Skies Travel Services, also sublet a portion of the demised premises during that period. Without question, these unauthorized uses constitute defaults within the meaning of paragraph 34(A), and it is an elementary principle of landlord-tenant jurisprudence that a tenant is responsible for the sub-tenant's breach of the lease. 1 Milton R. Friedman, Friedman on Leases § 7.702 (3d ed. 1990). Therefore, we hold that Vina was in default when it attempted to extend the original term of the lease.

Next, Vina argues that the lease, when read as a whole, is ambiguous, and any ambiguity should be construed against Capital, the drafter of the lease. Vina contends that paragraphs 15(A) and 24 require that Capital notify Vina in the event of a default or a failure of performance, and, therefore, a similar notice requirement is applicable in paragraph 34. Hence, Vina says that it is entitled to an additional term of five years because Capital failed to notify Vina of any default, thus depriving Vina of an opportunity to cure any default.

Capital argues that the lease is unambiguous and that the option to extend did not require Capital to notify Vina of any defaults that Vina had not cured during the period in which Vina could have exercised its option to extend. Thus, Capital says that Vina is not entitled to extend the lease for an additional

term.  We agree with Capital.

We follow the "plain meaning" rule when construing written instruments:

> [W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . .  This is so because the writing is the repository of the final agreement of the parties.

Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) (quoting Globe Company v. Bank of Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)); Management Enterprises v. The Thorncroft Co., 243 Va. 469, 472, 416 S.E.2d 229, 231 (1992).  The word "ambiguity" is defined as "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time."  Berry, 225 Va. at 207, 300 S.E.2d at 796 (quoting Webster's Third New International Dictionary 66 (3d ed. 1976)).  Additionally, and just as important, "we must interpret the agreement as written and we are not free to rewrite its terms." Management Enterprises, 243 Va. at 472, 416 S.E.2d at 231; Graphic Arts Mutual Ins. v. C.W. Warthen Co., 240 Va. 457, 460, 397 S.E.2d 876, 877-78 (1990).

The plain language used in the option to extend does not require Capital to give Vina notice of any defaults.  There is simply no such requirement in paragraph 34(A), and we will not impose such a requirement where none exists.  It is true, as Vina observes, that paragraphs 24 and 15(A) require that Capital give notice of defaults to Vina and permit Vina to cure such defaults.  However, these notice provisions, which are found in separate paragraphs of the lease dealing with the tenant's default and

possible <u>loss</u> of possession <u>during</u> the lease, do not render the

plain language in paragraph 34(A), giving the tenant the right to

extend the lease, capable "of being understood in more than one

way, or of referring to two or more things at the same time."

<u>Berry</u>, 225 Va. at 207, 300 S.E.2d at 796.  Accordingly, we hold

that paragraph 34(A) of the lease is not ambiguous and that this

paragraph does not impose a contractual duty upon Capital to give

notice of a default to Vina.[2]

> Paragraph 20 of the lease, which governs waivers, states:
> 20.  Failure of Landlord to complain of any act or
> omission on the part [of] Tenant, no matter how long
> the same may continue, shall not be deemed to be a
> waiver by Landlord of any of its rights hereunder.  No
> waiver by Landlord at any time, express or implied, of
> any breach of any provision of this lease shall be
> deemed a waiver of a breach of any other provision of
> this lease or a consent to any subsequent breach of the
> same or any other provision.  If any action by Tenant
> shall require Landlord's consent or approval,
> Landlord's consent to or approval of such action on any
> one occasion shall not be deemed a consent to or
> approval of such action on any subsequent occasion or a
> consent to or approval of any other action on the same
> or any subsequent occasion.  No payment by Tenant or
> acceptance by Landlord of a lesser amount than shall be
> due from Tenant to Landlord shall be deemed to be
> anything but payment on account, and the acceptance by
> Landlord of a check for a lesser amount with an
> endorsement or statement thereon or upon a letter
> accompanying such check that such lesser amount is
> payment in full shall not be deemed an accord and
> satisfaction, and Landlord may accept such check
> without prejudice to recover the balance due or pursue
> any other remedy.  Any and all rights and remedies
> which Landlord may have under this lease or by
> operation of law, either at law or in equity, upon any
> breach shall be distinct, separate and cumulative and
> shall not be deemed inconsistent with each other, and
> no one of them, whether exercised by Landlord or not,
> shall be deemed to be in exclusion of other, any two or
> more or all of such rights and remedies being

---

[2]We find no merit in Vina's argument that Capital is
equitably estopped from asserting that Vina is in default.
As we have held, paragraph 34(A) does not require that
Capital give notice of any default to Vina, and, hence,
equitable estoppel is not applicable.

exercisable at the same time.

Vina argues that this paragraph conflicts with paragraph 34(A) because the two paragraphs do "not lend themselves to harmonious interpretation" and that the paragraphs, when read together, create an ambiguity.  We disagree.  Paragraph 20, among other things, makes it clear that Capital's failure to complain of any act or omission on the part of the tenant does not constitute a waiver of Capital's legal rights and/or remedies. We simply find no language in paragraph 20 that conflicts with or creates an ambiguity with the language in paragraph 34(A).

Accordingly, we will reverse the judgment of the trial court and enter final judgment here on behalf of Capital.

<u>Reversed and final judgment</u>.