Present: Carrico, C.J., Compton, Stephenson, Hassell, Keenan, and Koontz, JJ., and Poff, Senior Justice

STANLEY YESKOLSKI, SR.

v.  Record No. 961005

KIMBLYN F. CROSBY, ET AL.

OPINION BY
SENIOR JUSTICE RICHARD H. POFF
January 10, 1997

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Robert B. Cromwell, Jr., Judge

This is an appeal from a judgment entered in a suit in equity praying for a decree declaring a note secured by a second deed of trust satisfied and the lien released, or, in the alternative, fixing the balance due on the note. We review the facts disclosed in the testimony and exhibits introduced in an ore tenus hearing conducted by a commissioner in chancery.

By deed dated December 7, 1981, Arnold B. Amdursky and D. Diane Amdursky, husband and wife, conveyed a parcel of real estate in Virginia Beach to William A. Crosby and Kimblyn F. Crosby, husband and wife. Subject to a first deed of trust securing a debt of $211,000 due Virginia Beach Federal Savings and Loan Association, the Crosbys, trading as Crosby Construction Company, executed the deed of trust at issue securing a note payable to the order of the Amdurskys in the sum of $68,000. Dated January 1, 1984, that note was payable in monthly installments of $1,000 for principal and $793.33 for interest and was "due and payable in full on January 1, 1985."

The Crosbys, having reduced the balance due to $64,000 by payment of the first four installments, decided to rent the house constructed on their property to Richard G. Maher and Patricia J. Maher, husband and wife. To that end, the Crosbys, the Mahers,

and the Amdurskys entered into a written agreement dated June 14, 1984. The Mahers agreed to pay the Crosbys a monthly rental equal to the monthly payments due under the first deed of trust and the sum of $30,000 as the "not refundable" price of an option to purchase. As an "additional consideration for [the option] payment", the Crosbys agreed to pay the balance due on a $20,000 note secured by a third deed of trust on the property held by certain members of the Crosby family and to "deliver to the Mahers a cancelled note and certificate of satisfaction".

Under the agreement, the Mahers were also required to pay the Amdurskys $50,000 at the rate of $10,000 per month. The Amdurskys agreed that, upon receipt of those payments, they would assign the second deed of trust note to the Mahers. Paragraph 5 of the agreement provided that "upon said assignment, . . . the Crosbys shall have no personal liability upon said note and that, should for any reason the Mahers deem it necessary to exercise their rights under the deed of trust or note, the Mahers shall look only to the secured property and not to any makers or endorsers on said note."

Paragraph 9 of the agreement stated that upon default by the Mahers, "all payments made to that date shall be retained by the Crosbys as liquidated damages and the Crosbys shall be entitled to regain possession of the premises." Paragraph 10 provided that in the event of default in payments the Mahers were required to make to the Amdurskys, "such sums as may have been paid prior

to default shall be retained by the Amdurskys and the Crosbys shall be entitled to a credit therefor."

The Mahers made the $30,000 purchase-option payment to the Crosbys and, as Diane Amdursky acknowledged in her testimony, the full $50,000 payment due the Amdurskys. A document, signed by Arnold Amdursky and addressed to the holder of the first deed of trust note, stated that the "deed of trust note dated January 1, 1984 in the amount of $68,000.00 from William and Kimberly [sic] Crosby to Arnold and Diane Amdursky has been paid in full".

The Amdurskys subscribed the following language that had been added to the foot of the second deed of trust note: "the undersigned do hereby assign the foregoing note . . . to the order of bearer without recourse on the undersigned."

On September 23, 1985, Peter K. Babalas, an attorney, made a telephone call to his former client, Stanley Yeskolski, a farmer in Spring Grove, Virginia. Babalas represented that he had a note owned by the Mahers, that the note was for sale for $65,000, and that the note was a good investment secured by a deed of trust on ocean front property. On September 24, 1985, Yeskolski, who had not seen Babalas for 10 years, drafted, signed, and issued his check payable to "Peter K. Babblas [sic]" for $65,000 "for secured loan".

William Crosby died on October 23, 1985. On December 2, 1986, Kimblyn Crosby obtained an unlawful detainer judgment against the Mahers for default in rental payments and seized

-3-

possession of the property.  On October 2, 1987, Kimblyn Crosby, in person and as executrix of her husband's estate, and Victor Peck, who had acquired title to the Crosby property[1], filed this suit against Yeskolski, the Amdurskys, the Mahers, and the trustees in the deeds of trust.  Babalas died later that year. Yeskolski went to Babalas' office and, for the first time, obtained the past due Crosby note and a copy of the June 1984 agreement.  He had received no payment from Babalas or the Mahers.

The suit remained pending for eight years.  Following an <u>ore tenus</u> hearing conducted in April 1995, the commissioner in chancery issued his report.

The commissioner found that "the statute of limitations has run on the $68,000 note and it cannot be enforced"; that "the note was paid before the $65,000 was advanced"; that "the current holder [Yeskolski] is not the holder of the note"; that "[t]he Amdurskys admit they have been paid in full and are owed nothing"; that "[t]here is no evidence that any of the money paid to Babalas was ever paid to Maher in consideration for the note"; that when Maher obtained the note, "no one was responsible to make any payments to Maher"; and that "nothing is owed to . . . Yeskolski, as he lent no money to the Crosbys or the Mahers or the Amdurskys".  Noting that, upon default by the Mahers, the

_____

[1]Title was later acquired by Gregory G. Vernosky and Lori B. Vernosky, husband and wife, and they were added as parties to this suit.

$50,000 payment the Mahers made to the Amdurskys "would be credited on the note", the commissioner recommended that "if the Court finds that the lien is enforceable . . . it is enforceable only to the extent of $14,000."

Yeskolski filed 43 exceptions to the commissioner's report. In a final judgment order entered February 27, 1996, the chancellor sustained Yeskolski's exception "to the Commissioner's finding that no sum is owed on the note in question"; ordered payment of $14,000 to Yeskolski "in full satisfaction of the deed of trust note in question"; and decreed that "immediately upon such payment, the lien of the second deed of trust . . . securing said note be released as a matter of record . . . ." We awarded this appeal to consider Yeskolski's multiple assignments of error and the appellees' assignment of cross-error.

The standard of review is that repeatedly and consistently defined and applied by this court as follows:

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence . . . .  [W]here the chancellor has disapproved the commissioner's findings, this Court must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court.  Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.

Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984) (citations omitted).  Absent ambiguity in the import of the

language contained in the note, the deed of trust, the written agreement, and the exhibits admitted at trial, we apply the plain-meaning rule as defined in <u>Globe Company v. Bank of Boston</u>, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965).  <u>Accord</u> <u>Berry v. Klinger</u>, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983); <u>see</u> <u>also</u> <u>Management Enterprises v. The Thorncraft Co.</u>, 243 Va. 469, 472, 416 S.E.2d 229, 231 (1992); <u>Capital Commercial Prop. v. Vina Enterprises</u>; 250 Va. 290, 294-95, 462 S.E.2d 74, 77 (1995).

On brief, Yeskolski contends that "[t]he facts and the applicable law in this case do not support the commissioner's and the chancellor's finding that Stanley Yeskolski is not a holder in due course" and that the chancellor erred in limiting his award to $14,000.  The appellees assigned cross-error to the trial court's failure to affirm the commissioner's finding that no obligation remained on the note secured by the second deed of trust.  In support of their assignment of cross-error, the appellees contend that the chancellor erred in failing to uphold the commissioner's finding that the note in issue had been paid in full before Yeskolski made the $65,000 payment to Babalas and, consequently, that the finding that Yeskolski was not a holder in due course was correct.  We agree with the appellees.

Once it appears that a defense exists, "a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."  Former Code § 8.3-307(3).

-6-

Applying definitions stated in the statutory ancestors of Code §§ 8.1-201(20) and former 8.3-202, we have said that

> before a transferee of a promissory note can become a holder in due course, he must first qualify as a holder. A transferee may become a holder of order paper only by "negotiation," that is, by indorsement and delivery, and the indorsement must be by or on behalf of a person who is himself a holder.

Becker v. Nat. Bank & Trust Co., 222 Va. 716, 720, 284 S.E.2d 793, 795 (1981).

The record shows that the Mahers obtained possession of the Crosby note by an assignment executed by the Amdurskys, the payees in the note. The assignees transferred the note to Babalas. After his death, his office staff transferred possession to Yeskolski. Thus, Yeskolski was a mere transferee of the note. As Becker teaches, he was not a holder by "negotiation," that is, he did not "become a holder of order paper . . . by indorsement and delivery" because there was no delivery under an endorsement made "by or on behalf of a person who [was] himself a holder." Id. Since neither the Mahers nor Yeskolski qualified as a holder, Yeskolski cannot qualify as a holder in due course.

With certain exceptions, "a holder in due course . . . takes the instrument free from . . . all defenses of any party to the instrument with whom the holder has not dealt". Former Code § 8.3-305. Stated differently, "[u]nless he has the rights of a holder in due course any person takes the instrument subject to . . . all defenses of any party which would be available in an

-7-

action on a simple contract". Former Code § 8.3-306(b).

The commissioner found that "the note was paid before the $65,000 was advanced"; that "[t]he Amdurskys admit they have been paid in full and are owed nothing"; and that "nothing is owed to . . . Yeskolski, as he lent no money to the Crosbys or the Mahers or the Amdurskys". Those findings, fully supported by the evidence before the commissioner, identify defenses "which would be available in an action on a simple contract".

Moreover, any claim Yeskolski might make against the Crosbys was subject to a procedural defense. The commissioner found that "the statute of limitations has run on the $68,000 note and it cannot be enforced". The right of action to enforce a time instrument accrues "on the day after maturity", former Code § 8.3-122(1)(a), and, the statute of limitations on an action on a written contract in effect at trial, Code § 8.01-246(2), was five years. As appears from the face of the Crosby note, it was "due and payable in full on January 1, 1985." Yeskolski became the transferee of the note in October 1987. The statute of limitations ran in January 1990. Yeskolski, who has never filed an action to enforce the Crosby note, has no right to do so now.

Sustaining the appellees' assignment of cross-error, we hold that the chancellor erred in failing to uphold the commissioner's finding that the second deed of trust note had been paid in full before Yeskolski acquired it. Necessarily, our holding rejects Yeskolski's contention that the judgment entered below in his

favor was inadequate, and we need not address the several arguments ancillary to his other assignments of error.

Accordingly, we will reverse and vacate the judgment entered below and enter final judgment here declaring the note secured by the second deed of trust satisfied in full and the lien of that deed of trust released.

<u>Reversed and final judgment.</u>