## CIRCUIT COURT OF STAFFORD COUNTY

Canterbury Estates
Homeowners Association

v.

Carolyn A. Norris

November 10, 1999

Case No. (Chancery) 98000129

BY JUDGE JAMES W. HALEY, JR.

The primary issue here for resolution involves an interpretation of the proper application of subdivision restrictive covenants to the construction of a second story to a garage and to the installation therein of toilet facilities. A secondary issue also arises as to the potential use of that second story.

Carolyn Norris owns Lot 1 in Canterbury Estates, a ten lot and two parcel subdivision in Stafford County. Her husband, Alan Liddell, has acted as her contractor in building a new residence and detached garage on Lot 1.

Lot 1 is subject to restrictive covenants contained in a Deed of Dedication dated January 24, 1983, and recorded in the Clerk's Office of the Circuit Court of Stafford County in Deed Book 441 at page 266.

As here relevant, these covenants (1) establish an Architectural Control Committee to review submitted construction plans for which approval "shall be assumed" unless the Committee objects in writing within ninety days of submission (Article II, paragraph 1); (2) state "No garage shall at any time be used as a residence, either temporarily or permanently ... (Article II, paragraph 3); (3) state "all bathrooms and toilet facilities shall be incorporated within the main structure. Outhouses are prohibited." (Article III, paragraph 1); and (4) state "No lot shall be used for purposes other than single-family residential use." (Article II, paragraphs 4, 5.)

The Canterbury Estates Homeowners Association filed a Bill of Complaint against Norris seeking that she "be permanently enjoined from continuing" the alleged violations of the four above-noted covenants. The matter was referred to a Commission in Chancery, and the cause comes before the chancellor upon exceptions to the Commissioner's report.

The procedural posture of this cause is well established.

> Although the report of a commissioner in chancery does not carry the weight of a jury verdict, Code § 8.01-610, the report should be sustained unless the chancellor concludes that the commissioner's findings are not supported by the evidence. *Yeskolski v. Crosby*, 253 Va. 148, 152, 480 S.E.2d 474, 476 (1997); *Hill v. Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296 (1984). This rule applies with particular force to findings of fact that are based on evidence taken in the Commissioner's presence but does not apply to pure conclusions of law contained in the Commissioner's report. *Morris v. United Virginia Bank*, 237 Va. 331, 337-38, 327 S.E.2d 611, 614 (1989).

*Orgain v. Butler*, 225 Va. 129, 132, 496 S.E.2d 433, 435 (1998).

"Covenants, expressed or implied, which restrict the free use of land are not favored and must be strictly construed. *Mid-State Equipment Co. v. Bell*, 217 Va. 113, 140, 225 S.E.2d 877, 884 (1976)." *Sloan v. Johnson*, 254 Va. 271, 274, 491 S.E.2d 725, 728 (1997).

In *Friedberg v. Riverpoint Bldg. Comm.*, 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977), the court stated that:

> The burden is upon the party seeking to enforce deed restrictions to demonstrate that the covenants are applicable to the acts of which complaint is made. Substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property.

In *Waynesboro Village v. BMC Properties*, 255 Va. 75, 80, 496 S.E.2d 64, 69 (1998), a case involving restrictive covenants, the court cited *Berry v. Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983), and noted:

> We have stated that the word "ambiguity" is defined as the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time.

Succinctly stated, Norris built a second story on a detached garage and installed a bathroom.

At the hearing before the Commissioner, counsel for Complainants narrowed the cause by stating that "the only issue is the two-story garage and the sewer line running to the two-story garage." (T. 99.)

Ronald L. Woltz, the president of the Canterbury Estates Homeowners Association ("CEHOA"), testified that CEHOA is "concerned about a business being run out of the garage" or that the detached garage may be "separate quarters." (T. 70.) He felt that the garage has a "potential for separate living quarters." (T. 78.)

Norris testified: "I have no intention of using [the garage] as commercial. I have no intention of using it as a separate living quarters." (T. 112; see also T. 166-188.)

Complainants offered no evidence whatsoever that the second story was, in fact, being used either for a business or living quarters. Accordingly, there is no violation of the covenants restricting such use. The prayer concluding the Bill of Complaint requests that the Respondents "be permanently enjoined from *continuing* ... violations of the restrictions." (Emphasis supplied.)[1]

With respect to the installation of a bathroom in the detached garage, Woltz acknowledged there were no restrictions as to the number of bathrooms one could construct. (T. 78.) The bathroom in the garage and the line which served it were constructed and approved in accordance with all relevant statutes and ordinances. The relevant restriction, Article III, paragraph 1, is quoted above.

With respect to this restriction, the following exchange occurred while counsel for Complainant was cross-examining Norris:

Q. A bathroom and in someplace other than the main dwelling?

A. That depends on how you interpret that. Because the way I look at it as it is a main dwelling, it is a structure, it is not an outhouse. My interpretation of those covenants that it is a building and it is a main structure.

Q. That garage, that two story garage is the main structure?

A. It is a structure. It is not an outhouse. The way I interpreted that was you needed to have bathrooms in a main structure. I interpreted that to say you cannot have a facility stand alone,

---

[1] While not a part of the *ratio decidendi* of this opinion, the court notes that covenants prohibiting the commercial or residential use of structures are generally considered clear, reasonable, and enforceable.

Port-A-Potty, Johnny-on-the-Spot, outhouse. So we put it, so it was enclosed in a structure.

(T. 118.)

There is no restriction in the deed of dedication to having a water and waste-water line installed in a garage. In light of that fact, the further lack of any restriction on the number of bathrooms one could construct and the language of Article III, paragraph 1, itself, one cannot say that the Norris interpretation of that restriction is *per se* unreasonable. And that being the case, the restriction, required to be narrowly construed, is ambiguous and thus unenforceable as written. See *Midstate-Equipment* and *Friedburg, supra.*

Liddell noted that "the house across the street has got a second story over the garage, which some would agree is attached, some would argue is attached, some would say semi-detached or detached, I don't know." (T. 128.)

If there is, in fact, a further objection by CEHOA to the existence of a second story over the garage, in addition to the potential uses of that story, the restrictions on which CEHOA relies in support of their claim are ambiguous and unenforceable. See *Friedburg, supra.* Further, even assuming the restrictions are enforceable, the court overrules the exception to the Commissioner's report which challenges the Commissioner's finding that there had been, in essence, either a waiver of such a restriction or laches in enforcing it.

In light of the foregoing, the exceptions to the Commissioner's report in conflict with this opinion are overruled and the request for an injunction is denied. Each party will bear their own attorney's fees, and the costs shall be equally divided.