# CIRCUIT COURT OF CULPEPER COUNTY

L. White & Co., Inc.

v.

Culpeper Memorial Hospital, Inc.

April 28, 2010

Case No. 2008-L-5O

By JUDGE JOHN G. BERRY

On January 27, 2010, the court conducted a hearing on the Plea in Bar (Conditions Precedent), Plea of Contractual Limitations, and Plea in Bar (Judicial Estoppel) filed by the Defendant, Culpeper Memorial Hospital, Inc. Shortly before that hearing, on January 4, 2010, the court entered a Consent Order (Oyer) making the seven enumerated exhibits a part of the pleadings in the case as if they were incorporated into the Plaintiffs First Amended Complaint. In the hearing on January 27, the court received three additional exhibits but no other evidence concerning the pleas in bar.

To summarize the posture of the case as of the time of the hearing, in response to the Complaint filed in this case, the Defendant responded with, among other pleadings, its Motion to Dismiss. In that motion, it contended that the contract required all claims to be submitted to the architect for the project before any contract action could be filed in court. Because the court found that Article 4 of the General Conditions required submission of a claim or claims to the architect as a condition precedent to commencing litigation and because the Complaint was silent as to the Plaintiff's compliance with this requirement, the court granted the Motion to Dismiss but allowed the Plaintiff to file amended pleadings. It did so in a timely fashion.

The First Amended Complaint contains allegations in paragraphs 28 and 29 that L. White and Company submitted the claim or claims to the architect. The Plaintiff's contention is, and has been, that its claims are detailed in the document entitled "Claim Presented By: L. White and Company, Inc., General Contractor. . ." dated May 31, 2002, sent to William

Hall Esquire, by Paul A. Simpson on June 14, 2002. In his cover letter sending the document, Mr. Simpson describes his client's submission as a "draft of the test of the impact claim of L. White & Co. . . ." The letter goes on to say that the "enclosed" is offered for settlement purposes only and to facilitate discussion in that regard.

### *Plea in Bar Regarding Submission of Claim to Architect*

In its Plea in Bar, the Defendant contends, among other things, that the Plaintiff failed to submit its claim (or claims) in accordance with the provisions of the parties' contract; therefore, it is barred from recovery because this condition precedent to filing the action has not been met. "A plea in bar is a defensive pleading that reduces the litigation to a single issue, which, if proven, creates a bar to the plaintiff's right of recovery." *Baker v. Poolservice Co.*, 272 Va. 677, 688, 636 S.E.2d 360 (2006). "The party asserting the plea in bar bears the burden of proof." *Id.* Where no evidence is taken in support of the plea, the trial court is required to rely solely upon the pleadings in resolving the issue presented, and the facts alleged in the complaint are deemed to be true. *Hawthorne v. VanMarter*, 279 Va. 566, 692 S.E.2d 226 (2010); *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882 (1996). With these standards in mind, in this case, the court heard no testimony on the plea and received only three exhibits into evidence. Those additional documents received on January 27 are the United States Bankruptcy Court Summary of Schedules (5 pages); the facsimile cover sheet, letter of June 14, 2002, from Mr. Simpson to Mr. Hall, and the Construction Claim, all attached together as one exhibit (12 pages); and the facsimile cover sheet from Mr. Hall to Mr. Hobbs dated June 20, 2002, letter of June 20, 2002, from Mr. Daniel to Mr. Hobbs, and copy of the find page of the Construction Claim, all attached together as one exhibit (3 pages). The previously-entered Consent Order (Oyer) had the legal effect of incorporating the exhibits described therein into the Plaintiff's First Amended Complaint. *Wood v. Commonwealth*, 25 Va. (4 Rand.) 329 (1826).

Part of the Defendant's contention is that the pleadings and the evidence before the court in the form of additional documents do not provide any substantiation of an independent wrongful termination claim. During argument on this issue, Plaintiff's counsel conceded as much. The court grants the Defendant's plea in bar concerning any claim of wrongful termination of the contract.

The Defendant's Plea of Contractual Limitations is also directed, at least partly, at a wrongful termination claim. In view of the court's rulings on the question of whether a separate wrongful termination claim is being made and on the Plea in Bar (Conditions Precedent), the court concludes it is unnecessary to decide the Plea of Contractual Limitations except to say

that it does not find that this action was filed too late, that is beyond the five-year of limitation for a written contract.

As to the balance of the Plaintiff's claim or claims, the court concludes that the documents attached to the Consent Order (Oyer), particularly Exhibits A, E, and G thereto, and the other documents considered by the court, in the context of the First Amended Complaint and the legal standards applying to consideration of the plea, indicate that the parties were treating the Plaintiff's claim as having been submitted for decision under the contract pursuant to the provisions of Article 4 of the General Conditions. The architectural firm was attempting to reach a decision as to the merits of those claims, and, while it is disputed as to whether the Plaintiff supplied the additional information being sought by the architect, the court concludes that the Defendant has not proved that it is more probable than not that the Plaintiff failed to submit its claim for consideration by the architect. Contrary to the Defendant's argument, in granting the Motion to Dismiss the Plaintiff's Complaint earlier in the case, the court did not make any ruling concerning the submission of a claim to the architect, only that the pleadings made no allegation of such a submission and were, therefore, deficient. The court, accordingly, denies the Plea in Bar as to the issue of whether a claim was ever submitted as required by the parties' contract.

*Plea in Bar Regarding*<br>*Alternative Dispute Resolution Contract Provisions*

As a part of its Plea in Bar (Conditions Precedent), the Defendant also contends that the parties' contract required L. White and Company to submit the claim or claims it raises in this action to Informal Negotiation, then Mediation, as a condition precedent to filing suit. The parties' contract says the following in the Supplementary Conditions:

> 4.5 *Informal Negotiation and Mediation*
> Neither party may initiate litigation to pursue a claim arising out of or related to this Agreement, or the performance thereof, without first exhausting the two-stage dispute mechanism set forth in this provision. Exhaustion of such dispute resolution mechanism by agreement of the parties is a condition precedent to the filing of any litigation on such claim.

The contract goes on to describe stage one of the two-stage mechanism as Informal Negotiation and provides the manner of implementing this process. It further provides that stage two, that is Mediation, is initiated by either party giving written demand for mediation if informal negotiation fails to resolve the claim.

The Plaintiff makes no allegation in its First Amended Complaint that it exhausted this two-stage alternative dispute resolution mechanism prior to filing this action. Counsel for the Plaintiff contended in written and oral argument that it complied with the Informal Negotiation provision and relies on the documents as evidence of this fact. Even so, the Plaintiff concedes that it did not attempt to initiate mediation before filing suit; it relies on the argument the contract language concerning mediation is only advisory and does not require mediation to be undertaken before a contract action can be brought.

When parties enter into a contract that is complete on its face after arms-length negotiations and the contract uses plain and unambiguous language, the instrument itself provides the law governing the parties' relationship. *Management Enterprises, Inc. v. Thorncroft Co.*, 243 Va. 469, 416 S.E.2d 229 (1992); *Winn v. Aleda Construction Co.*, 227 Va. 304, 315 S.E.2d 193 (1984). In this instance, two sophisticated business enterprises explicitly defined the terms of their relationship regarding how disputes (or claims) were to be handled when they arose. In rejecting the standard language of the AIA form contract General Conditions and substituting the Supplementary Conditions language used, the parties implemented their intent to use informal negotiation and mediation as tools to at least delay being propelled into litigation. Their selection of this framework constitutes their mutual decision to require at least a good faith effort to avoid expensive and time-consuming litigation by first negotiating then by having a third-party assist in an effort to resolve disagreements by using alternative means; they put in place a very specific roadmap to govern any such situation should it arise.

The parties' choice of language is instructive: "*Exhaustion* of such dispute resolution mechanism by agreement of the parties is a *condition precedent* to the *filing* of any litigation on such claim." (Emphasis added.) Put differently, the parties defined the law of their relationship to be that this particular process of dispute resolution had to be completed prior to litigation being commenced. While the contract stopped there, short of containing any mechanism that guaranteed a resolution in advance of litigation, nonetheless the language selected, in this court's view, left no room for doubt as to the procedure to be followed to address a dispute of this nature.

The court rejects the argument of the Plaintiff that the pre-filing dispute resolution process was advisory only because the parties used the word "may" in the first sentence of Article 4.5(b) of the Supplementary Conditions. As counsel for the Defendant argues, the use of the word "may" does not automatically lead to the conclusion that the provision is not mandatory. *See TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 557 S.E.2d 199 (2002), and the cases cited in 4 Am. Jur., *Alternative Dispute Resolution*, § 58. "A home warranty agreement

mandated arbitration of warranty claims, even though the agreement stated arbitration "may" be requested, where the agreement expressly stated that arbitration was a condition precedent to the commencement of litigation." *Id.* quoting *Adcock v. Adams Homes, L.L.C.*, 906 So. 2d 924 (Ala. 2005). Even though this case involves mediation, not binding arbitration, the argument of the Defendant is no less persuasive when viewed in the context of all of Article 4.5. That provision concludes with the following language: "Should mediation fail, either party may *thereafter* file suit in the appropriate state court. . . ." (Emphasis added.) Since the written contract is the repository of the parties' intent, the court simply has no basis to conclude that the contract meant anything other than what it plainly says, litigation can only be commenced after mediation fails. Further, the court declines the invitation to stay the litigation and send the parties to mediation because that action is not contemplated by the parties' agreement that, again, provides the law of the case. The parties decided that the alternative dispute resolution process agreed to had to occur before a court action could be filed leading the court to the decision that the pending action should be dismissed, not stayed. To decide otherwise is to rewrite the parties' agreement.

In view of the foregoing, the court sustains the Defendant's Plea in Bar as to this issue. Based upon the submission by the Plaintiff of the five-page exhibit from the Bankruptcy Court and in accordance with the dialogue between counsel on January 27, 2010, during the hearing, the Defendant abandoned its Judicial Estoppel defense, at least as the court understood it, so the court makes no effort to further address that part of the defensive pleadings. The court also observes that the Plaintiff conceded the issue raised by the Defendant's Demurrer concerning the prayer for attorneys' fees in its written arguments filed in advance of January 27.

Mr. Nanavati shall prepare an order incorporating this letter ruling by reference and dismissing the action for the reason given and circulate the order for endorsement before it is transmitted to the court for its consideration.