# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### Young & Wife v. Ellis.

#### April 4, 1895.

| 91  | 297 |
| 92  | 241 |
| 91  | 297 |
| 98  | 181 |
| 91  | 297 |
| f104 | 442 |
| 91  | 297 |
| f110 | 691 |

1. Mining Privileges—*License—Lease.*—An agreement under seal to pay for certain mining and prospecting rights and privileges a specified sum annually until actual mining operations commence, and thereafter so much per gross ton for all ores mined and shipped, is not a mere license revocable at the will of the grantor, but is a mining lease, voidable only upon failure to comply with its terms.

2. Contracts—*How Construed.*—Every contract must receive a reasonable construction. Regard should be had to the intention of the parties, their situation, the subject matter of the agreement and the object to be attained. But a construction which would be unreasonable and unjust is to be avoided, if it can be done consistently with the terms of the agreement, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties.

3. Agreements—*Time of Performance Not Specified—Yearly Payments.*—An agreement to pay money, no time being specified, is an agreement to pay on demand ; an agreement to pay money yearly, is an agreement to pay at the end of the year from the date of the agreement; while an agreement to do some collateral thing, no time being specified, is an agreement to do it within a reasonable time.

4. Contracts—*Performance—Hindrance—Estoppel.*—A covenantor is excused from performing his part of an agreement when the other party hinders the performance. And when so hindered, the covenantee will be estopped from setting up the default of the covenantor.

Appeal from two decrees of the Circuit Court of Franklin county, pronounced respectively, May 19, 1892, and October 27, 1892, in a chancery suit wherein appellants were the complainants, and the appellee was the defendant.

*Affirmed.*

Opinion.

The opinion states the case.

*Anderson & Hairston* and *Dillard & Lee,* for the appellants.

*Dennis & Saunders,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

By an indenture dated March 11, 1889, but executed July 8, 1889, and recorded in the clerk's office of Franklin County Court, July 30, 1889, Armstead Young, Jr., and Abagail, his wife, appellants, in consideration of one dollar in hand paid, and the covenants and agreements of J. D. Ellis, of Philadelphia, Pa., appellee, contained in the indenture, granted to Ellis "the right and privilege of entering upon" a tract of land belonging to Young's wife, situated in Franklin county, Va., containing seventy acres, and fully described, " for the purpose of examining, testing, and searching for minerals and fossil substances of every nature and kind whatsoever, and petroleum oil, and of excavating, examining, mining, and quarring for paving stones or any of the above named and described substances or minerals," and "to such an extent as Ellis might desire, either in prosecuting and searching for minerals and stones, or in opening, boring, or working such mines as he may discover upon the land or any part thereof;" Ellis to have the right "to erect and maintain such buildings and machinery and fixtures as may be necessary to sufficiently work said mines, including any and all kinds of improved machinery and methods," &c., "and also the use of timber-lands and water necessary and requisite in working the same; and also the right of ingress and egress to any mine or mines discovered on the lands;" Ellis agreeing on his part to pay Young and wife " $25 per year, in the event the said minerals are not actually mined, said rental of $25 to be credited on

the royalty herein specified whenever actual mining commences;'' and, further, to pay Young and wife ''ten cents per gross ton for all the ores mined and shipped from said lands quarter-yearly, and at the end of each quarter during the existence of this lease, or the time under which the mines shall be worked, and for the use and rent of said lands;'' and he further covenants and agrees that he will not commit or permit any unnecessary damage to the land, &c. The indenture contains these further provisions: ''and it is further agreed that this lease is to extend and continue for the period of ninety-nine years from the date, provided the party of the second part pays the amount hereinbefore agreed to be paid, and at the time or times agreed to be paid, and in default of which this lease and agreement shall be void; and the party of the first part may re-enter into the possession of said lands and premises, and the whole thereof, and remove and eject the party of the second part, and all persons claiming under and through him, therefrom; and, if not worked for —— —— years this lease is void;'' and in consideration of the premises, and of one dollar to Young and wife paid, they further covenanted and agreed to and with Ellis, his heirs and assigns, that they would at any time within five years from the date of the indenture sell and convey to Ellis or his assigns the lands, together with the buildings and improvements thereon, at the price of one thousand dollars.

This paper is signed, sealed, and acknowledged by Young and wife, but not by Ellis.

At the rules held in the clerk's office of Franklin Circuit Court on the third Monday in April, 1892, Young and wife filed their bill of complaint against Ellis, setting out the making and execution of the indenture above referred to, which they call a lease, and charged that Ellis had not as yet commenced mining upon the land, nor paid complainants ten cents per gross ton for any ore, and had not paid them the $25 as

he promised to do until actual mining commenced, and had not released to complainants the said deed of lease, but that it still remained as a cloud upon their title to said tract of land; and further charged that Ellis had never taken possession of the land by virtue of the lease; the prayer of the bill being that Ellis might be required to show cause why the lease should not be set aside and declared null and void, and that the same be set aside and declared null and void, &c.

A number of witnesses were examined on behalf of both complainants and defendant, and on October 27, 1892, the cause came on regularly to be heard by the Circuit Court of Franklin county, upon the bill, the answer of Ellis then filed by leave, with replication thereto, and the depositions of witnesses, when the court decreed that, upon the payment by Ellis to Mrs. Young within thirty days from that date of the amounts that were due to her, viz., on the 11th day of March, 1890, $25, and on the 11th day of March, 1892, $25, with interest, then complainants' bill should stand dismissed as of the day of payment, with cost to the defendant; and at the May term of the court, 1893, the cause coming on again to be heard upon the papers formerly read, and on the decree of the October term, 1892, the decree is as follows:    *    *    * "It appearing to the court that the complainants have refused to accept the amounts decreed them at that term (October term), because the same was not offered within thirty days from the date of said decree, the court doth, therefore, adjudge, order, and decree that upon the defendant depositing in Franklin bank the amounts decreed to be paid to the female complainant by the decree aforesaid, to her order, or to the order of her attorneys,    *    *    *    that this suit shall stand dismissed as of the date of said deposit." It appears from the record that the deposit required by this last decree was made in the Franklin bank on May 25, 1893, whereby the decree became final, and the cause stood dismissed, and from this decree an appeal was allowed to this court.

The sole question to be disposed of here is, whether the Circuit Court of Franklin county erred in refusing to decree, upon the record as it then stood, the indenture executed by Young and wife to Ellis, null and void.

The authorities cited by appellants' counsel to sustain the contention that this instrument is only a revocable license, are all, or nearly all, cases arising on either parol agreements or written contracts wherein the licensee does not promise or undertake anything more than to pay a royalty on the ore, oil, or minerals raised from the mines or wells, while in the case here Ellis agrees by the acceptance of the indenture to pay as a consideration for the rights or privileges given him, a certain sum of $25 per year until actual mining commences; that is to say, Ellis is bound to pay this sum whether he mines or not.    Every contract must receive a reasonable construction.    An agreement to pay money, no time being specified, is held to be an agreement to pay the same on demand, and an agreement to pay money yearly is an agreement to pay at the end of the year from the date of the agreement; while an agreement to do something other than to pay money, no time being expressed, means a promise to do it in a reasonable time.    *Cowan* v. *Radford Iron Co.*, 83 Va. 550; *Warren* v. *Wheeler*, 8 Metcalf 97; *Atwood* v. *Cobb*, 16 Pick 227; *Ryan* v. *Hall*, 13 Metcalf 520; *Thompson* v. *Ketcham*, 8 Johns. 146.

Regard should be had to the intention of the parties contracting, and such intention should be given effect.    To arrive at this intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time and intended to accomplish.    A construction should be avoided, if it can be done consistently with the terms of the agreement, which would be unreasonable or unequal, and that construction which is most obviously just is to be favored as most in accordance with the

presumed intention of the parties. *Cowan* v, *Radford Iron Co.*, *supra; Howeth* v. *Anderson*, 25 Tex. 557; *Warner* v. *Hitchins*, 5 Barb. 666; *Halloway* v. *Lacy*, 4 Humphrey 468. Applying these rules to the agreement of Young and wife with Ellis, we find no difficulty in holding that it is not a mere license revocable at the will of Young and wife, but a grant of a right and privilege based upon a valuable consideration— a mining lease—that has become common in Virginia in the development of her resources, and only voidable at the institution of this suit for the failure of Ellis to pay the sum certain of $25 annually due on the lease. Bainbridge on mines, 168; *Elsworth* v. *Minn. Rwy. Extension Co.*, 31 Minn. 543; *Johnstown Iron Co.* v. *Cambria Iron Co. et als.*, 8 Casey 241; Pomeroy on Contracts, sec. 66; *Silsby* v. *Trotter*, 29 N. J., Eq. 228, 232; *State* v. *Bell*, 92 Amer. Decisions, 658, and cases cited.

A covenantor is excused from performing his part of an agreement when the other party hinders the performance. 12 Amer. & Eng. Enc. 1003. The evidence in this case shows that Ellis made every reasonable effort to pay Young and wife the sum of $25 due at the end of the first year from the date of this lease, and clearly discloses a purpose on the part of Young and wife to hinder the performance of this provision in the lease by Ellis, as the means of avoiding their contract. One witness testifies that he went to Young's house two days before this money was due, in 1890, with $25 in gold, saw a lady whom he took to be Young's wife, and told her that his business was to pay Young the $25 due on the Ellis lease, but she told witness that Young was in the Brown Hill and she did not know where to find him. Witness further testified that Young had said to him previous to this, that if he (witness) could annul the lease he could make some money by the operation, and that he saw Young after the visit to his house, and told him that the money was in bank at Rocky Mount

for him.    Another witness testifies that he went to the house
of Young on the day before this money was due, with $25 in
gold to pay the amount due by Ellis on the lease, showed the
money to Young's wife, told her what he had come for, and
asked her where Young was, and was told by her that he had
gone across the mountain about four miles to plow; that wit-
ness waited till nearly night and Young did not come, when
he told Mrs. Young that if he could find no one to pay this
money to, he would leave it in the bank where Young could
get it, and asked her to tell him so for witness; that in refer-
ring to the lease Mrs. Young said she did not know anything
about it, or would not have anything to do with it.    It is
further shown that Young, who had been acting for his wife
in this entire matter, had expressed to one of the witnesses
examined great anxiety to get rid of the lease to Ellis on
account of a better offer made him for the property.    This
evidence is wholly uncontradicted, save by Young and wife
who were examined on their own behalf, notwithstanding
Young's incompetency as a witness for his wife at that time,
and shows clearly that the non-payment by Ellis of the sum
due by him at the end of the first year of the lease was due to
the *mala fides* of Young and wife, and they are thereby
estopped from setting up Ellis'. default in this respect to avoid
their contract.    It is true that Ellis did not offer the amount
due on the lease in 1891 before the suit was brought, but as
he says in his answer, it would seem to be folly to be offering
money to a party who was evidently trying to escape from a
contract made with him.

We are of opinion that, upon the case as it stood at the
hearing, the Circuit Court of Franklin county did not err in
refusing to annul the lease from Young and wife to Ellis, but
as to the right of Young and wife to have this lease annuled
upon any state of facts arising after the decree of May the
19, 1893, showing that Ellis had defaulted in the payment of

the annual sum of $25, as specified in the lease, or failed or refused to operate the mines within a reasonable time, we express no opinion. It appearing, however, upon the face of the two decrees entered in this cause, that the Circuit Court has omitted to require Ellis to deposit the sum due by him, according to the lease, on March 11, 1891, in the Franklin bank, to the credit of Young and wife, or their attorneys, the decree of May 19, 1893, in this respect will be corrected, and, when so corrected, is affirmed.

AFFIRMED.