# CIRCUIT COURT OF THE CITY OF NORFOLK

James L. Harrell, III,
and Robert K. Harrell

v.

Crestar Bank et al.

May 5, 2000

Case No. CH96-363

By Judge Marc Jacobson

Enid H. Selph and Crestar Bank, as Executor of the Estate of Carlisle W. Harrell, Jr., deceased (Executor) seek the dissolution of the partnership known as J. L. Harrell, III, and C. W. Harrell & Associates (Partnership).

The Partnership was formed in 1977 "to purchase, own, develop, and lease various parcels of real estate." Partnership Agreement (Part. Agr.), attached to Bill of Complaint as Exhibit A, Article 2. The Partnership owns various properties upon which there are both convenience stores and supermarket grocery stores. These properties are managed by H & H, Inc. (H & H), and the stockholders of H & H are James L. Harrell, III (James) and Robert K. Harrell (Robert) who also each own twenty-five percent of the Partnership or, collectively, fifty percent of the Partnership.

The Part. Agr. describes the original partners and their percentage of ownership as follows:

| | |
|---|---|
| James L. Harrell, III | 25% |
| Robert K. Harrell | 25% |
| C. W. Harrell, Jr. | 17.65% |
| Enid H. Selph | 17.65% |
| C. W. Harrell | 14.70% |

Part. Agr., Art. 5.

Article 6(d) of the Part. Agr., entitled "Management Rights," delegates management authority to a management committee made up of two managing partners elected from among the members of the following groups:

> GROUP A. One managing partner shall be elected by the members of Group A, comprised of C. W. Harrell, C. W. Harrell, Jr., and Enid Selph. The Group A representative shall be entitled to 50 votes.
>
> GROUP B. One managing partner shall be elected by the members of Group B, comprised of J. L. Harrell, III, and Robert K. Harrell. The Group B representative shall be entitled to 50 votes.

The Part. Agr. prohibits any individual partner from borrowing or lending money on behalf of the Partnership without the consent of the other partners. Part. Agr., Art. 6(b).

C. W. Harrell (CWH) died in 1994, leaving his interest in the Partnership to Selph. C. W. Harrell, Jr. (CWH, Jr.) also died, and his interest in the Partnership is currently owned by Crestar Bank as Executor for the Estate of CWH, Jr. On March 1, 1996, James and Robert filed a Bill of Complaint for Declaratory Judgment and Injunctive Relief (Bill of Complaint) regarding a dispute relative to the sale of the deceased CWH, Jr.'s, interest in the Partnership. On May 15, 1996, Selph filed a Cross-Bill to the Bill of Complaint seeking an accounting and dissolution of the Partnership, claiming that James and Robert "had been engaged in conduct prejudicial to the Partnership business and in violation of the Partnership Agreement." *Defendant's Memorandum Regarding Partnership Dissolution Issues* (Def. Memo.), 2. The Executor filed a Cross-Bill to the Bill of Complaint on June 28, 1996, seeking dissolution of the Partnership on the basis of certain unauthorized loans and money payments and breach of fiduciary duties on the part of James and Robert.

By Decree of Reference entered on December 2, 1997, this Court referred the cause to Robert C. Stackhouse, Commissioner in Chancery (Commissioner) "to conduct an accounting of the Partnership, J. L. Harrell, III, and C. W. Harrell & Associates, and report his findings to the Court." The Commissioner retained an accountant, conducted hearings for several days and filed his Report on November 12, 1998. After considering Objections to the Report, the Report was confirmed by Order entered by this Court on July 1, 1999.

The Report indicated that, in the years preceding the instant suit, James and Robert appeared to have managed the Partnership and made all significant

management decisions of the Partnership without consulting a representative of Group A. *Report*, 8 and 12.

The Commissioner further found, *inter alia*, that James and Robert had loaned Partnership funds and made certain payments from Partnership funds without the knowledge or approval of their co-partner, Selph, in direct violation of controlling provisions of the Part. Agr. *Report*, 6-12. Relevant unauthorized transactions are as follows.

(1) In 1986, James and Robert loaned $147,965.00 of Partnership funds to a newly formed real estate partnership owned solely by James and Robert named Pavilion Realty. *Report*, 6. The loan was unsecured and was not evidenced by a note. *Id.* No interest was ever paid on the loan. *Report*, at 7. Pavilion Realty repaid the principal of the loan to the Partnership in February of 1998, after the Bank and Selph filed their Cross-Claims. *Id.*

(2) The Partnership loaned an additional $200,000.00 to Pavilion Realty on July 12, 1994. Although violative of the Part. Agr., the loan was fully repaid with interest on December 7, 1994.

(3) Management fees of approximately $92,000.00 were paid by the Partnership to Pavilion Realty between the years of 1992 and 1996. The Commissioner found the payment of the fees to be in violation of a Part. Agr. provision prohibiting any managing partner from receiving any compensation without the consent of the other managing partners for management services rendered by him. Part. Agr., Art. 6(d). These fees were paid because James and Robert had taken cuts in their salaries from H & H. Although the fees were not paid directly to James and Robert, the Commissioner ruled that "they cannot do indirectly what they were prohibited from doing directly." *Report*, 17. The management fees continued until 1996, when the fees were discovered and objected to by the Executor. No portion of the management fees have been paid back to the Partnership. *Report*, at 7-8.

(4) On December 31, 1996, a loan was made from Partnership funds in the amount of $2,700.00 to 460 Realty, a real estate partnership in which James and Robert have ownership interests. No repayment of this loan has been made. *Id.*

(5) James permitted H & H to pay to the Partnership only one half of the rent due to the Partnership under the lease on one of the Partnership's properties for the past two years. *Report*, at 9.

(6) The Partnership paid $40,625 in legal fees and costs incurred by H & H in connection with federal food stamp violations against H & H, an obligation solely of H & H.

On or about April 7, 1999, Selph and Executor served the following notice on James and Robert:

> The undersigned, being holders of at least fifty percent of the interest in the Virginia general partnership known as "J. L. Harrell, III, and C. W. Harrell & Associates" (the "Partnership"), hereby give you notice that we deem the Partnership to have been dissolved by reason of your breaches of the terms of the Partnership Agreement dated December 1, 1977; or, alternatively at our election, this will constitute notice of our desire to dissolve the Partnership effective October 8, 1997, as provided in Article 3 of the Partnership Agreement.

James and Robert argue that neither Selph nor Executor possess sufficient interest in the Partnership to dissolve the Partnership pursuant to the Part. Agr. They further contend that, despite the conduct and actions itemized and referred to above that the Commissioner concluded were in violation of the Part. Agr., the facts do not support a judicial dissolution of the Partnership.

With the exception of certain non-waivable rights and duties of all partners, relations among the partners of a general partnership are governed by the applicable governance agreement. Va. Code § 50-73.81. Thus, while the partners in a general partnership may amend, modify, or contract out of the statutory default provisions, Virginia's UPA stands poised to fill any gaps in the Part. Agr. where the Part. Agr. is silent as to any rights, duties, obligations, or relations among the general partners.

In the instant case, the Part. Agr. provides:

> The Partnership shall begin on October 9, 1977,[1] and shall continue for a term of twenty (20) years, and year to year thereafter until partners holding at least fifty percent (50%) interest give six months' prior written notice to the other partners of their desire to dissolve the Partnership . . . .

Part. Agr., Art 3. Although Selph "holds a 32.35% interest in the Partnership and is the beneficiary of her brother's 17.65% interest and has effectively noticed the dissolution of the Partnership," neither Selph nor the Executor alone possess the 50% interest in the Partnership required to effectuate a dissolution under Art. 3 of the Part. Agr. *Def. Memo.*, 11. However, Defendants contend that Art. 3 "grants them together the ability to effectuate a dissolution." *Def. Memo.*, 8.

Article 11 of the Part. Agr. governs the transfer of a deceased partner's interest in the Partnership:

---

[1]  The date of the death of J. L. Harrell, Jr.

> In the event of death of any individual partner . . . [the] Executor, Administrator, personal representative, heirs, successors, or assigns of such deceased . . . partner shall have the right to either sell or retain such Partnership interest.

Part. Agr., Art. 11. Article 11 then specifies the procedure for the sale of the deceased partner's interest to parties other than the deceased partner's heirs, assigns, or personal representative and fixes the formula by which to determine the purchase price. *Id.* at Art. 11(a)-(e). The transfer provision does not define the nature and extent of the "Partnership interest" that may be transferred by a partner upon that partner's death. James and Robert argue that the Executor, in exercising its right to retain the deceased CWH, Jr.'s Partnership interest as Executor for the estate, retained only the deceased partner's interest in Partnership profits. Selph and the Executor contend that the Executor retained not only CWH, Jr.'s financial rights, but also CWH, Jr.'s management rights under the partnership agreement, specifically, the right to effectuate a dissolution of the Partnership under Art. 3.

In construing the provisions of any contract, the court should look to the intent of the contracting parties as indicated in the contract, as well as the nature of the contract and the circumstances and purposes surrounding the contract at the time of agreement. *Young v. Ellis*, 91 Va. 297, 21 S.E. 480 (1895). As an initial matter, a partnership agreement cannot be fully and accurately interpreted without first considering the most important legal consequence of being partners and co-owners of a business: the partners' liability as co-principals. In a general partnership, several implications follow from the partners' status as co-principals. First, because the partners are individually liable for the debts of the business, the partners would certainly want significant say in the management of the business. Second, as a result of shared liability and management, the partners would expect to share equally in revenues and expenses. Third, given the significant rights and powers shared by partners, such as the right to profits and the power to bind the firm to debts for which the partners are individually liable, the partners would expect to be able to veto the admission of new partners and restrict each partner's ability to transfer his management rights to third parties. Larry E. Ribstein, *Unincorporated Business Entities*, 49-50 (1996).

These considerations are significant in a small, family owned general partnership such as the Partnership under present consideration. The Part. Agr. partially addresses these critical considerations by explicitly providing for equal management rights among the partners and restricting the admission of additional partners without the consent of all other partners. *See* Part. Agr.,

Art. 6 and Art. 17. In light of the facts surrounding the instant case, it would not appear logical to conclude that the contracting parties intended to allow for the free transfer of a deceased partner's management rights and interests to a third party such as the deceased partner's estate.

The default provisions of Virginia's UPA also limit a partner's transferable or assignable interest to financial interest alone, exclusive of the transferring partner's management rights and interests:

> The only transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions. The interest is personal property.

Va. Code § 50-73.106. The Virginia UPA further provides that the transfer of a partner's transferable interest in a partnership does not entitle the transferee to participate in the management or conduct of the partnership business. Va. Code § 50-73.107.

CWH, Jr., died in 1987. After his death, the Executor of his estate exercised its right under the Part. Agr.'s transfer provision to retain the deceased partner's interest in the Partnership. Since that time, the Executor has received distributions from the Partnership profits based up CWH, Jr.'s original percentage interest in the Partnership. With the exception of the present attempt to dissolve the Partnership, there is no evidence in the record that the Executor has in any way participated in, or even attempted to participate in, the management of the Partnership in the thirteen years that the Executor has held its interest in the Partnership.

In light of the facts surrounding the present Part. Agr., the Part. Agr.'s silence as to the nature and extent of a deceased partner's transferable interest in the Partnership, and the policy considerations detailed above, it cannot be said that the Executor possesses an interest in the Partnership sufficient to comprise part of the 50% Partnership interest required to effectuate a dissolution of the Partnership under Article 3 of the Part. Agr. Rather, Executor possesses only a financial interest in the Partnership entitling the Executor to receive distributions from Partnership profits based upon the deceased partner's percentage interest in the Partnership. Executor does not, however, possess the management interest necessary to comprise part of the 50% interest required to effectuate a dissolution under Article 3 of the Part. Agr. Thus, Selph and the Executor may not combine their interests for the purpose of dissolving the Partnership under Article 3 of the Part. Agr.

Accordingly, the Court concludes that Self and Executor may not combine their interest for the purpose of dissolving the Partnership under Article 3 of the Part. Agr.

Selph and Executor next contend that dissolution of the Partnership is warranted under Va. Code § 50-73.117. Code § 50-73.117 details the events causing dissolution and winding up of partnership business and provides in relevant part:

> A partnership is dissolved, and its business shall be wound up, only upon the occurrence of any of the following events . . . .
> 5. On application by a partner, a judicial determination that:
> a. The economic purpose of the partnership is likely to be unreasonably frustrated;
> b. Another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner; or
> c. It is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement . . . .

Va. Code § 50-73.117(5)(b) refers to partner conduct relating to the partnership business that makes it impractical to carry on the business with the wrong doing partner or partners. This provision would include consistent breach of the Part. Agr. and breach of partners' fiduciary duties of loyalty, good faith, and fair dealing. Alan R. Bromberg and Larry E. Ribstein, III, *Bromberg & Ribstein on Partnership*, at § 7.06(c)(1). Courts impose fiduciary duties where one is empowered to exercise discretion on behalf of a beneficiary, such as a co-partner in a general partnership. *Id.* at § 8.01. These fiduciary constraints are based on the notion that one partner would not entrust his property to another partner without an assurance that the latter will manage it in the former's interest. Judge Cardozo's opinion in *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928), detailed the fiduciary obligations of co-partners:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals for the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity

when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions . . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

(Citations omitted.)

Indeed, the main elements of the fiduciary obligations owed by one partner to another have been defined as "utmost good faith, fairness, loyalty." *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1078 (2d Cir. 1977). Thus, courts have decreed dissolution under the judicial dissolution provisions of the UPA when partners enriched themselves at the expense of the partnership by wrongfully retaining or disposing of partnership funds or property. *Newbuerger, Loeb & Co.*; *Brooke v. Tucker*, 149 Alà. 96, 43 So. 141 (1907); *Tembrina v. Simos*, 208 Ill. App. 3d 652, 567 N.E.2d 536, 153 Ill. Dec. 578 (1991); *Hanna v. McLaughlin*, 158 Ind. 292, 63 N.E. 475 (1902); and *Frankfort Const. Co. v. Meneely*, 62 Ind. App. 514, 112 N.E. 244 (1916).

In the instant case, the facts show many violations of the Part. Agr. by James and Robert. On three different occasions, James and Robert caused the Partnership to loan Partnership funds to outside parties without the consent of their co-partners in violation of Art. 6(b) of the Part. Agr. Further, the loans were made to outside business entities in which James and Robert have ownership interests and were, on at least one occasion, unsecured, not evidenced by a note, and repaid without interest.

James and Robert also caused the Partnership to pay management fees to a business entity owned solely by James and Robert in violation of Art. 6(f) of the Part. Agr. prohibiting a partner from receiving compensation for management services rendered by him without the consent of the other partners. These fees were paid because of salary cuts taken by James and Robert at H & H, and wrongful payment of the management fees continued for four years until discovered and objected to by Executor. Finally, James and Robert caused the Partnership to pay over $40,000.00 in legal fees and costs incurred by H & H in connection with federal food stamp violations against H & H. In total, the unauthorized transactions amounted to over $450,000.00 in Partnership funds being dispensed in direct contravention of the Part. Agr.

The actions of James and Robert represent not only violations of the governing Part. Agr., but violations of their fiduciary duties of loyalty, good faith, and fair dealing as co-partners in a general partnership. James and Robert caused themselves to be enriched at the expense of the Partnership through the wrongful and/or improper disposition of Partnership funds to outside business entities in which they had an ownership interest. *See*

*Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1078 (2d Cir. 1977); *Brooke v. Tucker,* 149 Ala. 96, 43 So. 141 (1907); *Tembrina v. Simos,* 208 Ill. App. 3d 652, 567 N.E.2d 536, 153 Ill. Dec. 578 (1991); *Hanna v. McLaughlin,* 158 Ind. 292, 63 N.E. 475 (1902); and *Frankfort Const. Co. v. Meneely,* 62 Ind. App. 514, 112 N.E. 244 (1916). Through breach of the Part. Agr. as well as their fiduciary duties of loyalty, good faith, and fair dealing, James and Robert have engaged in conduct relating to the Partnership business that makes it impracticable to carry on the business with the wrongdoing partners. Thus, dissolution of the Partnership is warranted under Code § 50-73.117(5)(b).

While the aforesaid discussion of Va. Code § 50-73.117(5)(b) may, as a practical matter, include Va. Code §§ 50-73.117(5)(a) and (c), the Court concludes and rules that dissolution of the Partnership is warranted under Code § 50-73.117(5)(b).